23

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                         BROWNSVILLE DIVISION
```

United States District Court
Southern District of Texas
FILED

DEC 2 7 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ROSALINDA SALAZAR AND * | |
| JESUS SILVA SALAZAR * | |
| * | |
| vs * | C.A. NO. B 01 105 |
| * | |
| BASILIO GOMEZ SR., CITY OF * | |
| BROWNSVILLE AND CARLOS ZAMORRANO * | |
| ARNOLD GALVAN, OSCAR LARA, ADRIAN * | |
| MASCORRO, AND REY LOPEZ INDIVIDUALLY * | |
| AND IN THEIR OFFICIAL CAPACITY * | |
| AS EMPLOYEES * | |
| FOR CITY OF BROWNSVILLE * | |

## **PLAINTIFF'S FIRST AMENDED PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

Come now Plaintiffs, ROSALINDA SILVA AND JESUS SILVA SALAZAR complaining of Defendants, BASILIO GOMEZ SR. CITY OF BROWNSVILLE, AND CARLOS ZAMORRANO, OSCAR LARA, ARNOLD GALVAN, ADRIAN MASCORRO AND REY LOPEZ and for cause of action would show the following:

### I. **Parties**

1. Plaintiffs are individuals residing in Cameron County, Texas.

2. Defendant, CITY OF BROWNSVILLE has been served and answered.

3. Defendant, BASILIO GOMEZ SR. has been served and answered.

4. Defendant CARLOS ZAMORRANO has been served and answered.

5. Defendant OSCAR LARA has been served and answered.

6. Defendant ADRIAN MASCORRO has been served and answered.

7. Defendant REY LOPEZ has been served and answered.

8. Defendant ARNOLD GALVAN has been served and answered.

## II.
## STATEMENT OF FACTS

9. Plaintiffs are the husband and wife. They are the owners and operators of a business which sells and buys used tractor trailer known as Valley Truck Sales. Plaintiffs have resided at 6377 Expressway 77, Brownsville, Texas since the mid 1980s. On or about the early 1990s, Plaintiffs purchased a home directly behind their business, which previously was owned by his brother, Juan Antonio Silva Salazar. Both Jesus Silva Salazar and Juan Antonio Silva Salazar have been hard working, successful and prosperous businessmen prior to the incidents made the basis of this suit. Since such incident, Plaintiffs have sustained substantial loss of income. The Defendant Gomez is the owner of a flea market adjacent to the Plaintiffs' property. Over the past ten years there has been three lawsuits between Defendant Gomez and Plaintiffs arising out of the use of an easement on land owned by Juan Antonio Silva Salazar, located between the property of Juan Silva Salazar and Plaintiffs. The easement grants access to Mr. Gomez, his heirs and assigns. The easement has been used over the years as an access road to the Flea Market. Gomez has sued the Silvas on three separate occasions for various allegations which disrupted or affected the use of the easement. The first suit filed in 1991 was dismissed. The second in 1994 went to trial and a jury found Juan Silva Salazar, through employees of his, to have interfered with the easement and damages of $40,000.00 were awarded. [Jesus Salazar was a party to this case, but no issues of liability were presented to the jury as to him.] The third case is described below.

The easement in questions is an unpaved, unimproved caliche road that runs from the frontage road of Expressway 77 to the Gomez flea market parking lot, located behind Plaintiffs residence. The Gomez Flea Market is open for business only on weekends, but the

easement remains open to all traffic, twenty four hours a day, seven days a week. Although requests by Plaintiffs were made to limit traffic to those dates that customers and vendors of the Gomez Flea Market would utilize the easement, such efforts have been met with outright refusal by the Defendant Gomez. The Gomez Flea Market has at least two other access roads to this same Flea Market Parking lot and vendor area. Since 1995, Defendant Gomez hires off duty City of Brownsville Police officers, including the individual defendants, to act as security guards, chauffeurs and traffic control personnel. Defendant Gomez has been allowed to flaunt his violations of city ordinances which came to the knowledge of the City due to complaints by the Plaintiffs. It is from this relationship between the defendants, Zamorrano, Lopez, Lara, Mascorro and Galvan and Mr. Gomez that the incident made the basis of this suit arose.

  10. During the years prior to the incident made the basis to this suit, the Gomez Flea Market had requested building permits to construct canopies, pave land and other facilities. There was a specific permit issued which required that Gomez pave all access roads amongst other things . Although the Defendant City was specifically advised of the failure of Gomez to comply with said permit, the City failed and refused to act. The Plaintiffs individually and through their attorneys made and filed numerous complaints about the numerous city code and health violations including odors emanating from the bathroom facilities, the trash and the traffic to the various city departments. Included in one complaint was the common practice of Gomez to haul raw sewage in an unapproved water tank truck to dump on his personal property, an unauthorized and illegal act. The City, through its officers, city manager and department heads made a concerted effort to retaliate against the Plaintiffs for making these complaints. The City refused to require the Gomez flea market to pave the easement, pick up the trash, control the odors or do anything to control the volume or pattern of traffic, the parking of vehicles illegally

parked around the flea market on public roads, the mishandling of solid waste or the various other complaints made.

11. Defendant City employee, Carlos Rubinstein, then city manager or department head, who had the decision making positions was represented at material times by the same legal counsel that the Defendant Gomez Flea Market had retained. Defendant City' Police Department or the individual defendants Galvan, Mascorro, Lopez, Lara and or Zamarrano refused to respond to the numerous calls from Plaintiffs about the illegal parking, conducts and health code violations. Defendant City Police Department refused to enforce known traffic violations and instead harassed and retaliated against the Plaintiffs for making these complaints by issuing Plaintiffs citations for weeds on property Plaintiff did not own and for maintaining the customary parts and equipment a used tractor trailer shop would utilize in its business. These citations were contested and dismissed.

12. On or about January 1999 Defendant Gomez sued Plaintiffs for interfering with the use of the easement. In January, 2000, the parties went to trial in State district court. The allegations of the Gomez were that the Silvas had sprayed water on the easement making it impossible and that the Silvas had sprayed water on one of the offduty police officers working security for the Defendant Gomez. Various persons testified prior to trial, including Zamorrano and Gilbert Gonzales, Jesse Pinales, Carlos Zamorrano and Mariano Gonzales. Manuel Lucio and Mariano Gonzales and Lucio testified live at trial. At this trial, testimony was had that the usual practice of the police department officers "moonlighting" was to call in on duty officers to effectuate parking tickets and or arrests. See Ex. _____, page _____, Ex. __ page ___

The defendant officer Zamorrano had been deposed and or testified live at trial along with other officers who worked off duty for Defendant Gomez.. This testimony was used by the

Defendant Gomez in its case in chief and was supposed to support Defendant Gomez's allegations of wrongful conduct by the Plaintiffs. After a seven day jury trial, the jury totally disregarded the testimony and, although the defense called no witnesses, a directed verdict was entered in favor of Juan Silva Salazar and a jury verdict in favor of Jesus Silva Salazar. Within two months of that jury trial, the incident made the basis of this suit occurred, as more fully set out below.

13. On or about April 9, 2000, Plaintiffs, was at his home and place of business. Defendant Gomez had two offduty police officers working as security guards. The flea market was open on this date, which was a Sunday. On the weekend it was common to have over seven thousand (7,000) cars pass through the unimproved caliche road.

The Plaintiffs were well known to the two Defendant's employees working as security guards, Lara and Lopez, as Plaintiffs would speak to them and had made numerous complaints about traffic, trash, illegally parked cars and police department inaction, over a long period of time. On this date Plaintiff, Jesus Silva, left his business and advised Lara and Lopez, he, Jesus Salazar intended to return in a short while. Plaintiff advised defendants, Lopez and Lara, because Plaintiffs' family members and customers had previously been refused entry or reentry onto their residence and business property by these employees of defendant.. Within fifteen minutes Plaintiff Jesus Silva returned to his home. Traffic on the frontage road was stopped by the defendants Lopez and Lara. Plaintiff then proceeded at a slow rate of speed on the improved shoulder to an area about 100 feet from his driveway. The exiting drivers coming off the easement yielded the right of way to Plaintiff and he proceeded onto his driveway.

14. Plaintiff got off his vehicle, a 1999 Ford Pickup 4x4 truck. He then observed the defendants, Lara and Lopez, following him onto his property, yelling and conducting

themselves in an abusive manner towards the Plaintiff. The defendants Lara and Lopez alleged that Jesus Silva Salazar had failed to stop his vehicle at their command and. Plaintiff told Loepz and Lara that they were employees of Gomez and to get off his property. These two defendants, Lara and Lopez were directing traffic as part of their job duties for Defendant Gomez and not in their official capacity, immediately prior to entering the property.

Rosalinda Salazar was in the area and was present during most if not all of the incident. The defendants Lara and Lopez then came on to Plaintiff's property in their capacity as security guards and agents of Defendant Gomez, trespassed onto Plaintiffs property and continued to ask the Plaintiff why he had not stopped. Plaintiff responded that the exiting drivers had allowed him to proceed and he did so in a safe slow manner. Plaintiff Jesus Silva had previously heard the security guards like Lopez and Lara, who were at all times material in the course and scope of their employment with Defendant Gomez, testify at deposition or trial that it was their practice to not make arrests or write citations while working for Defendant Gomez but would instead call for a police officer who was on duty. Knowing this, Plaintiff was concerned for his safety. Defendants Lara walked up to Plaintiff Silva with his baton in his hand, then swung his baton at Jesus Silva, without provocation or reason. Juan Silva Salazar raised his arm to block the baton to protect himself and was hit from the rear by Defendant Lopez in his back with a baton or fist. Plaintiff Juan Silva Salazar attempted to retreat, moved back and placed his arms and hands on the tailgate of his pickup truck. At this time both Lopez and Lara then hit Jesus Silva Salazar numerous times in the back, ribcage and shoulders with their fists, feet and batons. At this time Jesus Salazar was pushed or fell to the ground due to the force of the assault. At this time, Jesus Salazar' arms were forcibly placed behind his back and handcuffed. While on the ground, Defendant Zamorrano, Mascorro and Galvan had come onto the property. Zamorrano,

Mascorro and Galvan were also working off duty for Defendant Gomez and were in the course and scope of their employment at all relevant times. Zamorrano then came up to the Plaintiff, Jesus Silva Salazar and placed his knee on his back, pulling his hair up and cursed, taunted and assaulted Plaintiff Jesus Silva Salazar. Defendant Zamorrano pulled on the handcuffed arms of Jesus Silva Salazar to inflict more pain and cause more injury. Defendants Mascorro and Galvan saw the conduct of Zamarrano and failed to intervene and stop or deter Zamarrano, Lopez or Lara nor did they attempt to prevent the assault on the Plaintiff, but also hit, kicked and encouraged the assault by their conduct and lack of actions. Plaintiff Jesus Silva Salazar was yellling that he was injured and needed medical attention. His responses were met with more blows to the body while Plaintiff remained on the ground. Lara and Lopez had called other offduty officers to bring a golf cart to transport the Plaintiff back to the Flea Market. There was not any on duty police department employees during this whole time. Plaintiff's wife called the police department for assistance. Plaintiff Jesus Salazar, fearing for his life and safety, yelled at his wife to close and lock the gate to the property, which she did. The defendants refused to call an ambulance or provide medical assistance. These defendant, Lopez, Lara, Galvan, Mascorro and Zamarrano were off duty City of Brownsville Police officers, working for Defendant Gomez. They laughed and taunted the handcuffed Plaintiff while he was laying on the ground with statements like "where is your lawyer now,', while pulling his hair. After the beating of Jesus Silva Salazar and while he was still on the ground, defendants Lara, Lopez, Zamorrano, Mascorro and Galvan turned their attention to Rosalinda Salazar, threatening Rosalinda Salazar with arrest unless she could find the key to unlock the padlock on the gate. Upon being unable to produce a key that would open the padlock, she was placed under arrest and handcuffed tightly enough to cause severe pain by Defendant Zamorrano. She asked to

have the cuffs loosened due to the pain in her wrists and such request was refused. Excessive force was used on both of the Plaintiffs prior to and during their arrest. Defendant Zamorrano arrested and handcuffed Rosalinda Salazar when she could not find the right key to the padlock.

15. Plaintiff Jesus Silva Salazar was left on the ground until emergency medical services arrived and he taken by ambulance to Valley Regional Medical Center. He was then taken to Brownsville Police Department booked and processed. He was charged with criminal charges including disregarding official traffic control, aggravated assault, evading detention, resisting arrest and assault on police officer (three counts). Plaintiff Rosa Linda Salazar was handcuffed at the scene arrested and charged with one misdemeanor criminal charge, interference with duties of public servant. Both were taken to Brownsville City Jail, spent some hours there and bonded out. On or about Mary 24, 2000, the state dismissed the Resisting Arrest, evading detention and disregarding official traffic control charges and Plaintiff Jesus Silva Salazar was indicted for Aggravated Assault, and three counts of aggravated assault against a public servant. See Ex. _____. Subsequently all felony charges were dismissed against Plaintiff Jesus Silva Salazar . All charges against Plaintiff Rosalinda Salazar were dismissed by the State. _____ Plaintiff Jesus Salazar pled no contest to a misdemeanor assault charge. Neither Plaintiff had ever been arrested or had any criminal history prior to this incident.

16. Plaintiffs were not at the time of the events alleged in this complaint or at any other time, committing any offense against any laws or statutes of the State of Texas and Defendants did not have any probable cause nor reasonable grounds for believing that Plaintiffs were committing or had committed any offense.

17. Plaintiff alleges the Defendants Lara, Lopez, Mascorro, Galvan and Zamorrano were acting as agents or employees of the Defendant Gomez at all relevant times prior to the

time that the on duty police department officers arrived and Defendant Gomez is vicariously liable for the intentional acts and or negligence of its agents and servants in the assault, beating, infliction of injuries and damages done to the Plaintiffs. Plaintiff Jesus Silva Salazar was seen by Emergency personnel and thereafter by trained medical doctors for injuries to his back, ribcage and shoulders. He has incurred medical costs of more than Three Thousand ($3000.00) for the treatment, studies and medications due to the injuries inflicted as set out above. Jesus Silva has limited movements of his back and shoulder, pain and suffering as a result of the physical beating and assault at the hands of Defendants Zamorrano, Mascorro, Lara, Lopez and Galvan. Rosalinda Salazar suffered injuries to her arms, wrists and shoulders when she was the victim of excessive force while being handcuffed. Plaintiff Jesus Silva Salazar was seen by hundreds of people including his customers when he was left on the ground handcuffed. He has sustained loss of income, loss of wages, loss of wage earning capacity, embarrassment and humiliation as a further result of his being assaulted and beaten, attorneys fees for his criminal defense, fees for bonds in the amount of $6500.00. Plaintiffs comes now and sues for these damgaes in the sum of $2,500,000.000.

  18. In the alternative and without waiving the foregoing and in the unlikely event the Court finds that the defendants Lara, Lopez, Mascorro, Galvan and Zamarrano were acting in their official capacity at relevant times, Plaintiff alleges as follows. Each of these defendants, individually and in concert with each other and Gomez, acted under pretense and color of law and their official capacity, but such acts were beyond the scope of their jurisdiction and without authorization of law. Each defendant, individually and in concert with the others acted willfully, maliciously, knowingly and with specific intent to deprive Plaintiffs of their right to freedom from illegal seizure of their person, right to be free of excessive force when arrested and of his

right to freedom from unlawful arrest, detention and imprisonment, all of which rights are secured to Plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States and by Title 42 U.S.C. Section 1983 and 1988. By reason of the above Plaintiff Jesus Silva Salazar suffered injuries to his back, shoulder, ribcage, loss of income, loss of wage earning capacity while being deprived of his liberty, subjected to excessive force and retaliated against by the defendants Zamorrano, Mascorro, Lara, Lopez and Galvan to Plaintiff's damage in the sum of $1,000,000.00.

19. In making the above described unlawful arrest and by the use of excessive force in the arrest and in retaliation of the Plaintiffs exercising their clearly established constitutional rights to free speech and to seek relief in the civil courts, defendants Zamorrano, Mascorro, Lara, Lopez and Galvan acted willfully, maliciously, and without any excuse or justification whatsoever, knowing their conduct was unlawful and in violation of Plaintiffs rights. Thus Plaintiffs are entitled by virtue of 42 U.S.C. Section 1983 to exemplary damages in the sum of $50,000.00 from each of these individual defendants, Zamorrano, Lopez, Lara, Mascorro and Galvan.

## SECOND CAUSE OF ACTION

20. Plaintiffs repeat and realleges the Paragraphs 8 through 18 of his first cause of action as if expressly set forth at length.

21. Plaintiffs would show that all charges which were filed on the 9th of April, 2000 against the Plaintiffs were dismissed.

22. Plaintiffs would show that the Defendants, Zamorrano, Mascorro, Lopez, Lara, Galvan and Gomez, conspired to file the above referenced criminal charges against Plaintiffs as retaliation for their previous complaints against the defendants Gomez and City of Brownsville

departments including the police department, health department and building department.. The defendant Gomez used his personal and business relationships with the codefendants, Zamorrano, Mascorro, Lopez, Lara and Galvan to have Plaintiffs arrested after losing the last lawsuit in State Court. The defendants Gomez, Zamorrano, Mascorro, Lopez, Galvan and Lara conspired to make false statements against the Plaintiff Jesus Silva Salazar to cast them in a false light and to harm his personal and business reputation. Such conduct on the part of the defendants including Gomez, Zamarrano, Lopez, Lara, Mascorro and Galvan was done knowingly, was meant to cause damages and intended to inflict severe emotional distress for which Plaintiffs come now and sues.

## THIRD CAUSE OF ACTION

23. Plaintiffs incorporate by reference the allegations set forth above. Defendants Zamorrano, Lara, Mascorro, Galvan and Lopez were employed as law enforcement personnel for the City of Brownsville on or before April 9, 2000. In the alternative as stated above if the court finds these defendants were acting in their official capacity, Plaintiffs alleges as follows. Plaintiff alleges that the City through its police department had a persistent, widespread practice of city officials or employees although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents {city} policy. Such practice, adopted by the City, was a policy, practice or custom of encouraging, permitting or authorizing its law enforcement officers to use excessive force against citizens with whom they come into contact and arresting individuals without probable cause; as well as encouraging off duty officers to unlawfully detain and arrest persons with whom they come into contact.

24. The policy stated above was adopted with deliberate indifference to its known or

obvious consequences and was the moving force beind the constitutional violations alleged above. It will be shown in discovery, if permitted that the City showed a deliberate indifference in its practice of allowing its police officers to use excessive force, to detain and or arrest certain persons without cause as was done to the Plaintiffs. The City knew through complaints to its Chief of Police and commanders of the problems the off duty officers were causing to the Plaintiffs as well as the refusal to enforce local statutes. The city knew through its Chief of Police and commanders the dispute which was ongoing between Defendant Gomez and the Plaintiffs and allowed its officers to be used as private security to enforce the wishes of the Defendant Gomez knowing or with deliberate indifference to the obvious consequences of harm to the Plaintiffs. Defendant City acted willfully, maliciously and without good faith so that they are subject to exemplary damages as provided by Texas law.

25. The defendants Zamorrano, Mascorro, Lara, Lopez and Galvan maliciously prosecuted and slandered Plaintiffs by accusing them of crimes which would constitute felonies and misdemeanors and which they knew or should have known they had not committed. Such conduct constitutes malicious prosecution and an invasion of Plaintiffs privacy which caused the damages as set forth above, for which Plaintiffs come now and sue.

26. Plaintiff would show that the acts and actions of the Defendants were a producing cause or a proximate cause of the Plaintiffs damages. Plaintiff seeks damages in the amount of Five Million ($5,000,000.00) Dollars in actual and compensatory damages jointly from the defendants and an additional One Million ($1,000,000.00) Dollars in punitive or exemplary damages for the claims set forth in Plaintiffs Original Petition from defendant Gomez and the City and Fifty Thousand ($50,000.00) dollars, in punitive or exemplary damages from the remaining individual defendants.

## PRAYER FOR RELIEF

27. Plaintiff prays that the Defendants be cited with service of process, that they be required to respond to the allegations herein and that the Plaintiffs have and recover as follows:

a. Actual damages as against the defendants jointly and severally in an amount not to exceed FIVE MILLION ($5,000,000.00) Dollars in actual and compensatory damages and ONE MILLION ($1,000,000.00) Dollars in punitive damages.

## JURY REQUEST

27. Plaintiff respectfully requests a jury trial in this cause.

RESPECTFULLY SUBMITTED

_____
ALBERT VILLEGAS
1324 EAST SEVENTH
BROWNSVILLE TEXAS
FEDERAL ID NO 3903
956 544 3352
FAX 956 544 7828
State Bar No. 20585450
Federal ID no 3903

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent to counsel of record on this the 27th day of December, 2001 via regular mail and fax.

_____
ALBERT VILLEGAS