2 4

United States District Court
Southern District of Texas
FILED

JAN 0 2 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROSALINDA SALAZAR AND | § | |
| JESUS SILVA SALAZAR | § | |
| | § | |
| vs | § | C.A. NO. B01 105 |
| | § | |
| BASILIO GOMEZ SR., CITY OF | § | |
| BROWNSVILLE AND CARLOS ZAMORRANO | § | |
| ARNOLD GALVAN, OSCAR LARA, ADRIAN | § | |
| MASCORRO, AND REY LOPEZ INDIVIDUALLY | § | |
| AND IN THEIR OFFICIAL CAPACITY | § | |
| AS EMPLOYEES | § | |
| FOR CITY OF BROWNSVILLE | § | |

**PLAINTIFFS' UNOPPOSED MOTION TO SUPPLEMENT
RULE 7(a) RESPONSE**

Comes now ROSALINDA SALAZAR AND JESUS SILVA SALAZAR, Plaintiffs herein,
and files this their Unopposed Motion To Supplement Rule 7(a) Reply and would show the
Court the following:

I

Plaintiffs filed their 7 (a) reply on the 27th day of December, 2001. Said reply was to
include the affidavits of each of the Plaintiffs, attached hereto as Exhibits 1 and 2. On the date the
response was filed the plaintiffs had left out of town for the holidays and did not return until the
28th of December, 2001.  Plaintiffs move this Court to allow them to supplement the record with
these two affidavits as if timely filed with its reply.

Wherefore Plaintiffs pray that the Court grant this Unopposed  Motion to Supplement to
Rule 7(a) Reply and for such other and further relief at law or in equity to which he may show
himself entitled to.

Respectfully Submitted,

VILLEGAS LAW FIRM
BY: ALBERT VILLEGAS
1324 EAST SEVENTH STREET
BROWNSVILLE, TEXAS 78520
TELEPHONE:  (956) 544-3352
TELECOPIER: (956) 544-7828
STATE BAR NO: 20585450
FEDERAL ID NO 3903
ATTORNEY IN CHARGE FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with opposing counsel for Defendants on the 2nd day of January, 2002 who stated they did not oppose the granting of this motion.

Albert Villegas

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent to counsel of record on this the 2nd day of January, 2002 via regular mail.

ALBERT VILLEGAS

# AFFIDAVIT

My name is Rosalinda Salazar. I am one of the Plaintiffs in this cause. I am over the age of eighteen years. The following is true and correct and based on my personal knowledge.

Jesus Silva Salazar and I are married. We have resided at 6377 Expressway 83, Brownsville for over ten years. Jesus Salazar and I operated a company known as Valley Truck Sales which sold tractor trailers to individuals. For the ten years we have lived at this location, we have had substantial problems with Basilio Gomez Sr. Mr. Gomez is owner and operator of the 77 Flea Market. The problems result from his operation of the flea market and the use of the easement. Mr. Gomez has refused to pave the easement or to install any type of traffic control devices. He has refused to do anything about the caliche road which ends up throwing dust over our home, vehicles, air conditioner units and swimming pool. Prior to April of 2000, I had called the City of Brownsville Police Department to complain about the illegally parked cars numerous times. The Police department employees who answered told me after a while to stop calling to complain about this parking problem. I had called the health department to complain about the odors and the trash which was blowing from the flea market to our property.   When the health department came to inspect the employee spent more time at my business and issued citations for having tractor trailer parts around the yard, when that is my business. I was also issued a citation for having long grass on property which did not belong to me or my husband.

For many years that Gomez had hired the off duty police to act as security guards, I had problems entering and leaving my property. Customers told me that numerous times the traffic control officers  refused to let them turn into my driveway and even after circling around the officers refused them entry. When I told Jesus Salazar about this problem, he told me to tell the off duty officers that I lived there and just turn in. I heard Jesus Salazar tell the off duty guards that they were preventing his customers and family from entering and the off duty guards would just continue to do so.

On April 9, 2000, I was at our business. Jesus Salazar had just left to inspect some damage to his brothers property. When he turned into the driveway upon his return, I saw two off duty officers following him, yelling and cursing at him. When I got closer, I heard more yelling and heard Jesus Salazar tell the two officers to get off of his property. I saw Lara go up to Jesus and tell him something and Lopez went behind Jesus. These two started to hit Jesus in the back

and shoulders with their batons and fists. Jesus backed up and I told him not to argue, let them arrest you. Jesus then put his hands up on the back of the tailgate of the pickup he was driving. At this time both Lara and Lopez began to hit Jesus with their fists and forced him to the ground. Lara and Lopez continued to knee him in the back and then put handcuffs on him. Lara called on his radio to bring the golf cart to transport Jesus. I feared for Jesus' safety and closed the padlock on the gate to the driveway. Mascorro, Galvan and Zamarrano jumped the fence and came onto our property. Zamarrano came up to Jesus when he was handcuffed on the ground, kneed him in the back, pulled his hair and told him in Spanish that he thought he was a bigshot, that where is your lawyer now. I told the Lara, Lopez and Zamarrano to call for an ambulance, to help Jesus up. I was threatened with arrest if I continued to speak by Zamarrano. Mascorro and Galvan watched the other officers hit and kick Jesus when he was on the ground and did nothing to stop the beatings.    Mr. Zamorrano asked me for the key to the padlock and I told him I could not find the key. Mr. Zamorrano and Mr. Mascorro escorted me to my home to look for the key. While I searched the house and office for the key, no on duty police officers had arrived, nor had an ambulance been requested as I asked. When I came from the house which was located about 200 feet from the office, I walked right beside Jesus who was yelling in pain to get help, to call Constable Cantu or (Deputy Constable) Salinas, to call his brother and his lawyer. I was not allowed to bet close to Jesus. I could tell he was hurting. Jesus was left on the concrete floor for over an hour before an ambulance finally arrived and took him away.

When I returned to open the gate, I found I had the wrong key. A police officer with a tag identified as Bennett, told me to open the gate. I explained I had not opened the gate in the morning and could not locate the key. I was then placed under arrest for not finding the key. I did not resist being arrested or try to run away.  My stepson, Albert Salazar finally located a key and the gate was opened. My arms were forcibly placed behind me and my hands were handcuffed tightly by Mr. Zamarrano. I asked about my kids welfare and Mr. Zamarrano told me not to complain or he would turn them over to the State. I was then taken to Brownsville Police Department jail, processed and then bailed out after an hour of being at the jail. After my arrest, I went to a doctor to treat me for the injuries I suffered to my arms, wrists and shoulder when I was handcuffed by Mr. Zamarrano.

I was subsequently charged with interference with duties of public servant. I pled not guilty and subsequently the charges were dismissed by the state. I still have a great deal of pain to my arms and wrists but discontinued treatment due to the costs and difficulty in continuing with the doctors visits.

ROSALINDA SALAZAR

STATE OF TEXAS

COUNTY OF CAMERON

Before me, on this day personally appeared Rosalinda Salazar, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 26th day of December, 2001.

NOTARY PUBLIC

## AFFIDAVIT

My name is Jesus Silva Salazar. I am over the age of eighteen years. I am competent to state the following. The following is true and correct and based on my personal knowledge.

I have resided at 6377 Expressway 83 for over ten years. I have operated a business selling used tractor trailers for over ten years. My brother has land next to my property and I take care of the tractor trailers he places on the property. For a number of years I had asked Mr. Gomez to do something about the caliche road since it caused a lot of dust to blow towards my home and property. Mr. Gomez refused. I watered down the caliche on occasions and Mr. Gomez ended up suing me for that. I complained to various City departments including, the Police Department, Health Department, Building Department and public works about the various problems. City employees arrived on a few occasions and did nothing except write me up for weed violations on property I did not own. I called the Police Department at least ten to fifteen times to complain about the illegally parked cars, the traffic and vandalism to my property. I called the health department at least five to ten times about the odor coming from the flea market. I called the building department, including department head, Santiago Navarro, to complain about the height of the parking lot, the new areas being built and the failure to pave the easement access road. After years and years of making complaints individually and through my attorney, nothing changed. Even though I told the City health department that Mr.Gomez was hauling raw sewage in unapproved trucks, nothing was done until Constable Cantu cited Mr.Gomez's employee for the illegal discharge and hauling of raw sewage. In January 1999, I was sued by Mr.Gomez for putting water on the easement. I admitted to watering down the easement to control the dust but never in a way to affect the use of the easement. Officers Carlos Zamorrano, Mariano Gonzales, Jesus Pinales, Gilbert Gonzales and Manuel Lucio testified at depositions which I attended or they testified live at trial. I remembered that these officers said they would call in on duty officers to write up tickets if they were off duty. In January 2000, the case went to trial, and I was not found liable for anything I was accused of.

On or about the 9th day of April 2000, I operated a business known as Valley Truck Sales, open seven days a week. I open the business at 8:30 am and close at 6:30 p.m. every day of the week. At this time I sold used tractor rigs. The lot adjacent to mine had tractor trailers for sale which belonged to my brother which I also assisted in showing and offering for sale to the general

public. I have resided on this same property for over ten years.

For over ten years Basilio Gomez has operated a flea market in property which is adjacent to mine. For more than ten years, there has been disagreements about the extent of use of an easement which runs right beside my property line within twenty feet of my home. The easement is on land owned by my brother, Juan Antonio Silva Salazar. Juan Salazar and I have asked Mr. Gomez to restrict use of this easement to his family only or for use by his customers during the weekends only when the flea market is open. Juan Salazar and I offered to pay two thirds of the cost to pave it to prevent the dust which erupts from the unpaved caliche. Prior to April 2000, Mr. Gomez refused to pave the easement. Due to the excessive amount of traffic on weekends, up to ten thousand cars on some weekends and usually about seven thousand cars a day on each of the weekends the flea market is open, there was usually severe traffic congestion, illegal parking and accidents.

About 1995, Mr.Gomez hired off duty police officers, including Mariano Gonzales, Manual Lucio, Carlos Zamarrano, Oscar Lara, Rey Lopez, Arnold Galvan and Adrian Mascorro to work as his chauffeur, traffic control and general security around the seven acre flea market. Over the years the off duty officers worked for Gomez while in uniform. I asked these off duty officers to do something about the illegal parking, but my requests were denied. For over three years, I had continuous problems with these off duty officers refusing me entry to my business as well as my family and customers while they were directing traffic. I asked the off duty officers, including Lara, Lopez, Galvan, Mascorro, Zamorrano, Manuel Lucio and Mariano Gonzales numerous times to allow my customers to be able to enter the driveway to my business. Nevertheless the off duty traffic officers would prevent my family and customers from entering my premises. I advised my attorney, Albert Villegas, who in turn advised Mr. Gomez and Brownsville Police Department Chief Ben Reyna and Commander Randy Dunn of these problems, but the off duty officers continued to prevent me, my family and customers from entering my business. I tried to befriend these officers with friendly conversation and cokes during hot weather, but to no avail. Unless I was there watching, these off duty officers would prevent entry to my customers and family. These off duty traffic control officers continued to prevent my wife and son from entering the driveway numerous times, forcing them to circle the freeway frontage roads to attempt to gain entry. More than once my wife went into the driveway while the off duty

officers were yelling at her to proceed forward. The officers did not attempt to cite or arrest Rosalinda Salazar when she did this. This had occurred before the civil trial of January 2000 described below. Knowing this I would pull up a chair to the entry of my business and sit there. Numerous times the off duty officers would pull up in the golf carts they use and park it in my entry to the driveway. I would request they move it and sometimes they complied and other times they delayed or outright refused. In order to protect my business and family, I felt I had to be physically present not only on the premises but at the entry to the driveway to force the off duty officers to allow my family and customers to enter my premises. This also was before the January 2000 civil trial when the off duty officers would not arrest me or threaten me with arrest for telling them to let my family or customers into the property. Only after the January 2000 civil trial was I retaliated against and subjected to the illegal arrest, detention and arrested with excessive force.

On Sunday, April 9, 2000, at approximately 1:00 pm I drove out of my driveway in a very conspicuous White 1999 Ford F250 pick up truck and left my house. I intended to inspect properties of my brother less than one mile from my property. I had received a call that the mailbox and fence had been hit by a car. On my way out of my property, I waved to the two off duty officers, Lara and Lopez and gave a signal that I was to return shortly, to indicate I intended to enter my property upon my return. Previously my family and customers were denied entry to my property by these same Lara and Lopez and other off duty officers who were directing traffic out of the flea market. In order to assure my self that they would let me back in, I signaled to them by use of my hand indicating a circle. The two officers saw me signal, acknowledged me and I left. Approximately twenty minutes after I left and inspected the property, I returned to my home. The traffic on the frontage road was backed up to allow traffic out of the flea market. At this time, the expressway in front of my home was under construction and the frontage road was being used as the only roadway into Brownsville. Since my business was open and I operate the business with my wife, I did not intend to be out a long time. Having signaled to the off duty officers, Lara and Lopez, controlling traffic of my return I very slowly proceeded around the stopped traffic on the improved shoulder towards my driveway. The traffic was backed up for over a half mile on the frontage road by the Lara and Lopez. While on the improved shoulder, I came up to within fifty feet of my driveway, stopped and acknowledged Lopez and Lara. The

exiting traffic allowed me to cross. I proceeded at less than 15 miles per hour. Upon passing the easement exit and entering my driveway, Lopez, whom I had previously signaled, walked onto my property yelling and screaming. At no time prior to my entering my property were either Lopez or Lara in front of my vehicle or closer than five to six feet of my vehicle. I had driven my vehicle about sixty feet onto my property. Both off duty officers, Lara and Lopez, the taller one, leading, followed me to onto my property. He then proceeded to question me a very loud voice asking me why I did not stop and obey him. Lara and Lopez then approached me in a threatening manner with batons in one hand and the taller one yells why I did not pay attention to them. As he approached me yelling I told them to get off my property. I remembered hearing officer Zamorrano and Lucio testify at trial or deposition that they would not arrest or ticket people when they were offduty. I did not view them as law enforcement officers, only as Gomez employees. When Lara was less than three feet away, he swung the baton at me, which I blocked with my hand. He then grabbed my right arm and twisted it behind me. Then Lopez came up behind me and hit me in my lower back and shoulder area with his baton two or three times. While trying to block the blows by doubling up I again question why they were doing this.. The taller one, Lopez, says that " you son of a bitch motherfucker why didn't you stop, who do you think you are" and repeated it. At the same time, I moved backward to protect myself from getting hit. By this time, my wife Rosalinda Salazar is a few feet from the rear of the pickup truck tailgate. Rosalinda Salazar then went to the front passenger seat and grabbed the cellular telephone and calls our attorney, Albert Villegas. Rosalinda explains what is happening    I heard my wife tell me in Spanish to do nothing, that she was talking to our lawyer. I was only a few feet away from the rear of the pickup truck I had been driving. I placed both my hands on the top of the tailgate which is over five feet high. The two, Lopez and Lara then kicked and hit me with their batons on the left and right side of my back a few times. I was pushed or forced to the ground and then the Lara grabbed my arms twisting forcibly behind me and handcuffs me, then hits me with his baton and knees in my back and shoulder.after I was handcuffed. The taller one continued to yell obscenities at me," No te crees mucho, tu te crees mucho". I told him they were all corrupt. The tall one then says to Lopez to get the cart. I then yell to Rosalinda Salazar, my wife, to close the gates. Up to this time no Brownsville Police Department officers or police cars were at the scene. I was on the ground, handcuffed. I knew that Lopez and Lara wanted to take

me to the Gomez property and feared they would beat me worse. When I was handcuffed, there was still no police cars at the scene. Rosalinda Salazar ran to the gate and closed it for fear Lopez and Lara would continue to beat Jesus Silva Salazar after he was taken to the Gomez property. .I was forcibly thrown down or taken to the ground by Lopez and Lara and got hit while on the ground, handcuffed. Within a few minutes Zamarrono, Galvan and Mascorro jumped over the fence. Rosalinda then went to the office building to answer the phone and call for more assistance from her brother in law and Deputy Constable Robert Salinas and Constable Conrado Cantu. Zamorrano went into the pickup, looking into it. While I was on the ground handcuffed, Zamorrano then places his knee on my back, grabbing my hair and pulls it back and tells me in Spanish that "I should not think I am a bigshot, where is your lawyer now". Mascorro, Lopez, Lara and Galvan were all watching Zamarrano pull my hair and continue to hit and kick me and did nothing to stop or deter the hitting. Mr. Zamarrono was referring to my previous meetings with him when he was being deposed by my attorney and when he was called as a witness at trial. My lawyer embarrassed him during his testimony and I took his statements to be in retaliation of my civil suits and complaints to city departments. Zamarrono then walked to the office building towards  Rosalinda Salazar. There still are no police cars at the scene. There are no other on duty police officers present up to this time. Zamarrono and Mascorro question Rosalinda Salazar about the location of the keys to the gate padlock..

I saw Rosalinda Salazar come back from the house and walk toward the gate, asking me how I am. I kept telling her to get help to call (Constable) Cantu, (Deputy Constable) Salinas or our attorney. There were still no onduty police officers or cars present.

For the first time since Lara and Lopez came onto my property, onduty Police department officers and  police cars are at the scene. Three on duty officers including Sgt Bennett were at the gate at this time. An ambulance finally arrives and I am taken to Valley Regional Medical Center emergency room and then to jail. I am placed on bonds totaling almost $65,000.00 and after hiring a bondsman whom I pay $6500.00 I get out of jail.

I was charged with five different criminal charges. I hired Albert Villegas and Ruben Pena to represent me. I was indicted for aggravated assault and three counts of aggravated assault against a public servant.   I pled not guilty. I was also charged with three misdemeanors; resisting arrest, evading detention and disregarding official traffic control. The misdemeanor charges are

dismissed when I am indicted in Cause no. 00 CR 0603 E. All of the felony charges are dismissed against me and a misdemeanor charge of simple assault is filed in County Court at Law. I pled no contest and received deferred adjudication which I have completed and case was dismissed.

My wife Rosalinda Salazar was charged with interference with duties of a public servant and that charge was dismissed.

After the beating, I was initially treated for significant injuries, due to the beating and assault, at the emergency room at Valley Regional Medical Center. After I was released I was treated by Dr. Raul Garza and Dr. Fred Perez. I had physical therapy to my back and shoulder areas. I had a MRI to see what was causing me pain in my back and ribcage areas. Doctor Perez, an orthopedic surgeon told me to consider surgery to my shoulder but I can not afford the costs or time off since I am self employed. My injuries resulted from the excessive force used by Lara and Lopez during my arrest and the subsequent beating by Mascorro, Lara, Lopez, Galvan and Zamarrano, after I was handcuffed.

I have been unable to continue selling tractor trailers as I have been told that customers saw me on the ground, handcuffed and assumed there was criminal activity and they did not wish to return. I have had to sell used cars, traveling around the country weekly to purchase cars at auctions and making arrangements to have them transported down. While I used to make up to $2000.00 per unit when I sold the tractor trailers, I am now making less than a few hundred dollars selling used cars.

JESUS SILVA SALAZAR

STATE OF TEXAS

COUNTY OF CAMERON

Before me, on this day personally appeared Jesus Silva Salazar, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 28TH day of December, 2001.

NOTARY PUBLIC



ALBERT VILLEGAS
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES
APRIL 25, 2004