*47*

United States District Court
Southern District of Texas
FILED

MAR 0 5 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROSALINDA SALAZAR AND | § | |
| JESUS SILVA SALAZAR | § | |
| | § | |
| vs | § | C.A. NO. B01 105 |
| | § | |
| BASILIO GOMEZ SR. | | |

RESPONSE TO DEFENDANT GOMEZ
MOTION FOR SUMMARY JUDGMENT

Comes now, Plaintiffs who file this their Response to Defendant's Motion for Summary Judgment and would respectfully show the Court as follows:

I

Plaintiff sued the defendant Gomez as owner of the flea market for the damages caused to the Plaintiffs by persons employed by him. Plaintiffs claim they were physically assaulted by the employees of the Defendant Gomez, while in the course and scope of their employment of Defendant Gomez Flea Market. The Plaintiffs further claim they were intentionally and or negligently injured as a proximate result of the negligence, recklessness, malice and or indifference of Defendant Gomez. It is further alleged that Defendant Gomez acted through his employees and is liable under the various theories of principal-agent, respondeat superior and employer-employee relationships.

II

Every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done. Hoechst Celanese Corporation v. Compton, 899 SW2d 215, (Tex. App. 14th Dist. ) 1994. Once the presumption is raised, the burden of proof shifts and the defendant has the burden to escape liability by establishing that the workman was an independent contractor. Id at 219. Such persons employed by him included the codefendants, Zamorrano, Lara, Mascorro, Lopez and Galvan, who have since been dismissed in their individual capacity only from the lawsuit. Defendant Gomez' claim is that they are not liable under any theory for the actions of these persons as they were independent contractors. Plaintiffs would show the Court that since there are disputes about the controlling facts and more

than one reasonable conclusion can be inferred, the question whether one is an "employee" or " independent contractor" is a question of fact.  Bennack Flying Service, Inc. v. Balboa, 997 SW 2d 748 (Tex. App. 13th Dist.) 1999.  Only if there is one reasonable conclusion which can be inferred from uncontroverted controlling facts, question of whether one is employee or independent contractor is question of law.  Alvarado v. Old Republic Insurance Co., 951 SW2d 254, (Tex. App. 13th Dist.) 1997.

II

The cases have set out numerous factors for the trier of fact or Court to consider in this matter.  The Court measures the employer's right to control, for purposes of determining whether a worker is an employee or an independent contractor by considering (1) the independent nature of the worker's business; (2) the workers obligation to furnish necessary tools, supplies and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.  Limestone Products Distribution Inc. v. McNamara, 45 Tex Sup Ct. J. 382, (Tex. 2002) .  The test to determine whether a worker is an "employee" rather than an "independent contractor" is whether the employer has the right to control the progress, details, and methods of operations of the work, because an employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment, with respect to the work of an employee. Limestone Id.  The Defendant Gomez would also be liable for the acts of the "borrowed employee" if the employer (Gomez) or his agents have the right to direct and control the employee with respect to the details of the particular work at issue. St. Joseph Hospital v. Wolff, 94 SW3d 513, (Tex. 2002).

III

The defendant Gomez affidavit attached is self promoting and not dispositive of the issue.  It is expected that Mr. Gomez would file his affidavit and state these things. However there is other sworn testimony of Mr. Gomez in prior civil litigation, as well as from Mariano Gonzales and the depositions of these employees, Lara, Lopez, Galvan, Mascorro and Zamorrano,  and the factors for the Court to consider in regards to his liability for the damages are controlling. When the Court considers Defendant Gomez affidavit with the  factors set out above in the Limestone case, factors 2, 4 and 5 reflect material issues of fact. Previously in litigation regarding the same

parties Defendant Gomez testified among other things that

1.) Mr. Gomez pays the individual police officers by the hour who work for him. Deposition page 8 and 9, dated April 6, 1999. Exhibit _1__

2.) Mr. Gomez places the off duty officers at the entrance to the easement. page 42, line 24 and 25. See exhibit 1.

3.) Mr. Gomez does not make the decision not to deduct social security or any of that. Page 67 line 16 to 19. See Exhibit 1.

4) Reynaldo Lopez testifed that he is told by Mr. Gomez or the supervisor, the hours he is to work, the amounts he is to be paid and the areas to protect. page 14 line 12 tp 15 and page 15 line 1 to 25. See exhibit 2

4) Lopez further testified that he was told when to show up. page 32 line 2 to 7. See Exhibit2.

5) Mr. Lopez testified he is not sure who gives the specific instruction. Page 35, line 4 to 19. See Exhibit 2 .

6) Mr. Lopez testified he knew who controlled him as he would follow the direction of Mr. Gomez. page 38 line 7 to 13. See Ex. 2.

7) Carlos Zamorrano testified that he knew Mariano Gonzales was hiring on behalf of Mr. Gomez. page 10 line 1 to 14, See Exhibit 3.

8) Zamorrano further testified that he saw Mr. Gomez as his boss. page 23 line 14 to 25. See Exhibit 3.

9) Zamorrano was on the scene of the incident solely due to his working for Defendant Gomez. page 39, line 14 to 17, see exhibit 3.

10)Arnold Galvan had worked for the flea market for two or three years and was paid by Gomez for work done on the date of the incident. . See page 9, line 18 to 25, page 10, line 1 to 10, See exhibit 4.

11) Mr. Galvan indicates that one of his employer while he was off duty was Mr. Gomez. Page 128, line 6 to 14, line 22 to 24, Page 129,line 19 to 23. See Exhibit 4.

                                                    IV

        The sworn testimony referenced above and incorporated herein as if fully set out is sufficient and substantial testimony to show at the least that there are material issues of fact and possibly as a matter of law that these off duty officers were employees of Mr. Gomez. The

substantial control, direction, payment and length of employment support the denial of the

Defendant Gomez Motion for Summary Judgment.

V

Defendant further moves for summary judgment alleging that Gomez is not liable for the

off duty officers conduct. The undisputed facts are that Mr. Gomez placed the off duty officers at

the entrance.   The only reason the offduty officers are there is for Gomez, not the City.  As

Zamorrano said they were out there enforcing rules of the private employer. See page 25 line 16

to 25, page 26 line 3 to 20, See exhibit 3. Zamorrano also states he knows that police officers are

not the only people who direct traffic. Traffic wardens or school crossing guards also direct

traffic and they are not police officers and that he would not have been on the frontage road had

he not been working for Gomez., Page 35, line 12 to 25,  and page 36 line 1 to 19, page 39 line

14 to 20,   See Exhibit 3 . Zamorrano also testified the City of Brownsville knew there was

substantial traffic and it did not send any on duty officers to direct traffic. Page 40 line 8 to 20.

See Exhibit 3.    Oscar Lara still considered himself an off duty officer when he was on the

property of Plaintiff, See page 93, line 14 to 21, Exhibit 5.  The Court can consider the actions of

these individuals and their enforcement of state law in other situations as to whether there exists

material issues of fact. For example, Lopez testified in the eight months that he was working for

Gomez, that he never made an arrest, wrote any traffic tickets, nor incident reports. See Exhibit

2, page 20, line 15 to 19. Galvan testified it was not uncommon for people to disregard these off

duty  officers who were directing traffic and in all those situations, nothing was done, not even a

traffic ticket.  See exhibit4, page 105 line 23 to 25, 106, lines 1 to 25, 107 lines 1 to 12.

The Court and fact finder can see that the only reason that the Plaintiff was chased down

and attacked was due to the long term animosity between the off duty officers employer and

Plaintiff. Zamorrano who was one of the longest employed persons had referred to the Plaintiff as

a "96", when speaking to newly hired off duty officers.  To police officers,  a "96" refers to a

mental patient or a person who is mentally ill.   There is no evidence from any party that

indicates that the Plaintiff Jesus Silva was in any way impaired at any time. The only purpose of

the reference was for these employees to have a prejudged perception of an unstable person.

Defendant Gomez fed the off duty officers this information and the off duty officers through

prior testimony and involvement in the prior litigation knew of Silva.

As the affidavits of the Plaintiffs previously filed and incorporated herein, Plaintiff had a reasonable belief to question the acts and conduct of these off duty employees of the Defendant Gomez. These same off duty officers would refuse to provide any service to the Plaintiff when called upon.

It would be unfair and contrary to law to allow Gomez and the employees to cloak themselves with law enforcement status to protect Gomez from liability. Fact issues remain as to the employer employee status as the Defendant has not met that burden. The test to be applied becomes a jury question as to whether the off duty officers were acting as a public servant or as an agent, servant of the employer. Blackwell v. Harris County, 909 SW2d 135, (Tex. App. 14th Dist.) 1995.

Wherefore Plaintiffs pray that the Motion for Summary Judgment filed by Defendant Gomez be denied in its entirety.

RESPECTFULLY SUBMITTED

ALBERT VILLEGAS
1324 EAST SEVENTH
BROWNSVILLE TEXAS
956 544 3352
BAR NO 20585450
ATTORNEY FOR PLAINTIFF

CERTIFICATE OF SERVICE

I Hereby certify that a true and correct copy of the foregoing has been sent this 5th day of March, 2003.

ALBERT VILLEGAS

CAUSE NO. 98-11-4333-E

BASILIO C. GOMEZ, SR. )( IN THE DISTRICT COURT
  Plaintiff   )(
        )(
VS.       )( CAMERON COUNTY, TEXAS
        )(
JESUS SILVA SALAZAR AND )(
JUAN ANTONIO SILVA  )(
SALAZAR     )(
  Defendants   )( 357TH JUDICIAL DISTRICT

---

ORAL DEPOSITION OF
BASILIO C. GOMEZ, SR.
APRIL 6, 1999

---

   ORAL DEPOSITION OF BASILIO C. GOMEZ, SR.,

produced as a witness duly sworn by me at the instance

of the DEFENDANT, taken in the above styled and

numbered cause on APRIL 6, 1999, from 11:17 a.m. to

2:17 p.m., before LOU ZUNIGA, Certified Shorthand

Reporter No. 2198 in and for the State of Texas, at the

offices of Ernesto Gamez, 777 East Harrison,

Brownsville, Texas, pursuant to the Texas Rules of

Civil Procedure.



**ORIGINAL**

10:26  1    that he would destroy the easement.  We have a picture

10:26  2    of that.

10:26  3        Q.  You know that he was pumping water out of the

10:26  4    back of his yard when it was flooding, right?

10:26  5        A.  Yes, but that water he was not throwing it on

10:26  6    the easement.  He made a drainage ditch that helped the

10:26  7    water go out, but the water from the three hoses was

10:26  8    being discharged on the easement.  I have pictures of

10:27  9    that.

10:27  10       Q.  Okay.  Let me ask you about Mr. Carlos Campos.

10:27  11   How do you know him?

10:27  12       A.  He's a seller that goes there to the flea

10:27  13   market.

10:27  14       Q.  Have you ever been to his home?

10:27  15       A.  No.

10:27  16       Q.  Have you ever paid him any money?

10:27  17       A.  No.

10:27  18       Q.  Has he paid you any money?

10:27  19       A.  To me, no.

10:27  20       Q.  To your sons?

10:27  21       A.  No.  That I know of, no.

10:27  22       Q.  Are you paying the police officers that are out

10:27  23   there directing traffic?

10:27  24       A.  Yes, that's it.

10:27  25       Q.  How did you contract with these police

10:27 1    officers?

10:28 2        A.  I pay them by the hour.

10:28 3        Q.  And do you pay each individual police officer?

10:28 4        A.  Yes.

10:28 5        Q.  And how did you find out which police officers

10:28 6    would come out and do this work for you?

10:28 7        A.  Because I see them.

10:28 8        Q.  Did any of your sons help you hire those police

10:28 9    officers?

10:28 10       A.  They offered their services, and we contracted

10:28 11   them by way of Gonzalez.

10:28 12       Q.  Who is Gonzalez?

10:28 13       A.  He's the brother of Aurora, Mariano Gonzalez.

10:29 14   He was the one that got them for us, and he also works

10:29 15   there.  He has them as companions for himself.

10:29 16       Q.  You paid them with cash or check?

10:29 17       A.  By check.

10:29 18       Q.  And what is the account under that check -- the

10:29 19   name of the account?

10:29 20       A.  77 Flea Market.

10:29 21       Q.  Is the 77 Flea Market owned by you individually

10:29 22   or by your wife as well?

10:29 23       A.  Individually.

10:29 24       Q.  Okay.  Is that a corporation?

10:29 25       A.  No, it's a private party, mine.

BRYANT & STINGLEY, INC.
McAllen          Harlingen         Brownsville
(956)618-2366    (956)428-0755    (956)542-1020

11:39  1      the form.  It's argumentative.

11:39  2              MR. VILLEGAS:  No, it's just form.  You

11:39  3      can't say the rest.

11:39  4              MR. QUINTANILLA:  I did.

11:40  5      A.  But can you give me a report of the accidents

11:40  6      that have been there in the last five years?

11:40  7      Q.  We have some of them.  What I'm asking you,

11:40  8      sir, is, you made complaints when you said -- when Mr.

11:40  9      Silva did something wrong and it affected your

11:40  10     business, right?

11:40  11     A.  When he blocked the easement, yes.

11:40  12     Q.  When he does something that affects your

11:40  13     business, right?

11:40  14     A.  That's correct.

11:40  15     Q.  You call the police like a law-abiding citizen

11:40  16     should, right?

11:40  17     A.  Yes.

11:40  18     Q.  And you expected the police to come listen to

11:40  19     your complaints when you made these -- when you called

11:41  20     them, right?

11:41  21     A.  That's it.

11:41  22     Q.  Do you think Mr. Silva Salazar should not have

11:41  23     the same right?

11:41  24     A.  That's why I have policemen there, so they can

11:41  25     direct traffic.  I have put them at the entrance.

1    Q.  But you know the cars park on the frontage --

12:31  2  up and down the frontage in front of your flea market

12:31  3  and in front of Mr. Silva's property, right?

12:32  4    A.  Yes.  Yes, they park there because they want.

12:32  5  I do not charge in the parking.  Over there they do

12:32  6  charge them.  That's their problem.

12:32  7    Q.  Why don't you tell the policemen to direct all

12:32  8  those people to the back?

12:32  9    A.  The policemen have enough leaders already.

12:32  10  It's not for me to tell them.

12:32  11    Q.  Well, you are the one that pays them out there,

12:32  12  right?

12:32  13    A.  A minimum part.

12:32  14    Q.  How much do you pay them an hour?

12:32  15    A.  $15, I think.

12:32  16    Q.  You don't deduct social security or any of

12:32  17  that, do you?

12:33  18    A.  No, because I don't know the reason for that.

12:33  19  Long & Chilton are the ones that have my accounting.

20        (Gomez, Sr. Exhibit No. 2 Marked).

12:33  21    Q.  For the record, we asked you to produce a

12:33  22  number of items.  We asked you to bring these items

12:33  23  that are marked in Exhibit No. 2.  You didn't bring any

12:34  24  documents today, correct?

12:34  25    A.  No.

CAUSE NO. 98-11-4333-E

| | |
|---|---|
| BASILIO C. GOMEZ, SR. | )(   IN THE DISTRICT COURT |
|       Plaintiff | )( |
| | )( |
| VS. | )(   CAMERON COUNTY, TEXAS |
| | )( |
| JESUS SILVA SALAZAR AND | )( |
| JUAN ANTONIO SILVA | )( |
| SALAZAR | )( |
|       Defendants | )(   357TH JUDICIAL DISTRICT |

REPORTER'S CERTIFICATION
DEPOSITION OF BASILIO C. GOMEZ, SR.
APRIL 6, 1999

I, LOU ZUNIGA, Certified Shorthand Reporter
in and for the State of Texas, hereby certify to the
following:

That the witness, BASILIO C. GOMEZ, SR., was duly
sworn by the officer and that the transcript of the
oral deposition is a true record of the testimony given
by the witness;

That the deposition transcript was submitted on
_4-13-99_____ to VICTOR QUINTANILLA for
examination, signature, and return to Bryant &
Stingley, Inc., by _5-4-99_____, 1999;

That the amount of time used by each party at the
deposition is as follows:
VICTOR QUINTANILLA - 0 hours, 16 minutes
ALBERT VILLEGAS - 2 hours, 33 minutes

That $_468.30_ is the deposition officer's charges
for preparing the original deposition transcript and
any copies of exhibits, charged to Defendants.

That a copy of this certificate was provided to the
following parties:

VICTOR QUINTANILLA
LAW OFFICES OF ERNESTO GAMEZ
777 East Harrison
Brownsville, Texas  78520

BRYANT & STINGLEY, INC.
McAllen      Harlingen      Brownsville
(956)618-2366    (956)428-0755    (956)542-1020

ALBERT VILLEGAS
LAW OFFICES OF ALBERT VILLEGAS
1327 East 7th Street
Brownsville, Texas  78521


    I further certify that I am neither counsel for,
related to, nor employed by any of the parties or
attorneys in the action in which this proceeding was
taken, and further that I am not financially or
otherwise interested in the outcome of the action.

    Pursuant to Rules 205 and 206 of TRCP, an additional
certificate will be issued.

    Sworn to by me this *13th* day of *April*        ,
1999.

LOU ZUNIGA, Texas CSR) 2198
Expiration Date: 12/31/99
Bryant & Stingley, Inc.
2010 East Harrison
Harlingen, Texas  78550
(956)428-0755

BRYANT & STINGLEY, INC.
McAllen          Harlingen          Brownsville
(956)618-2366    (956)428-0755    (956)542-1020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ROSALINDA SALAZAR AND      ) (
JESUS SILVA SALAZAR        ) (
     Plaintiffs          ) (
                      ) (
VS.                        ) (    C.A. NO. B-01-105
                      ) (
BASILIO GOMEZ, SR., CITY   ) (
OF BROWNSVILLE AND CARLOS  ) (
ZAMORRANO, ARNOLD GALVAN,  ) (
OSCAR LARA, ADRIAN         ) (
MASCORRO, AND REY LOPEZ    ) (
INDIVIDUALLY AND IN THEIR  ) (
OFFICIAL CAPACITY AS       ) (
EMPLOYEES FOR CITY OF      ) (
BROWNSVILLE                ) (
     Defendants          ) (

---

ORAL AND VIDEOTAPED DEPOSITION OF
REYNALDO LOPEZ, JR.
DECEMBER 12, 2002

# ORIGINAL

---

ORAL AND VIDEOTAPED DEPOSITION OF REYNALDO

LOPEZ, JR., produced as a witness at the instance of

the PLAINTIFFS, taken in the above styled and numbered

cause on DECEMBER 12, 2002, reported by DONNA McCOWN,

Certified Court Reporter No. 6625, in and for the State

of Texas, at the offices of Willette & Guerra, L.L.P.,

3505 Boca Chica Boulevard, Suite 400, Brownsville,

Texas, pursuant to the Federal Rules of Civil Procedure

09:23:59  1    contractors, and my duty is to abide by state laws.

09:24:06  2    And if I -- if I understand your question correctly,

09:24:13  3    what -- our job there is to safeguard human life, make

09:24:18  4    sure everybody is safe, and that there's no -- there's

09:24:21  5    no incidents.  I don't understand when you say by

09:24:26  6    direction.

09:24:27  7        Q.  Okay.  You got to be there at the time that

09:24:29  8    Mr. Gomez has dictated that you be there, correct?

09:24:32  9        A.  That's under the contract agreement that we

09:24:36 10    have.

09:24:36 11        Q.  I'm sorry?

09:24:37 12        A.  That's under the agreement that we have, yes.

09:24:39 13        Q.  Okay.  There's a written agreement out there

09:24:41 14    somewhere?

09:24:41 15        A.  No, no.  It's not an agreement -- not a written

09:24:43 16    agreement, but it's an understanding that if I have to

09:24:45 17    be there at 9:00, I will be there at 9:00.

09:24:56 18        Q.  I understand that, but what we're talking about

09:24:56 19    is that the agreement terms aren't something that you

09:24:56 20    negotiated.

09:24:56 21             Mr. Gomez told your supervisor, whether

09:24:57 22    it's Mariano or told y'all directly, "This is the hours

09:25:00 23    I want you to work," correct?

09:25:01 24        A.  That's correct.

09:25:02 25        Q.  And Mr. Gomez said, "These are the amounts that

09:25:03 1    I'm going to pay you," correct?

09:25:05 2        A.   That's correct.

09:25:06 3        Q.   And so -- "And this is the areas that I want

09:25:08 4    you to be able to -- the flea market is the area that

09:25:19 5    I'm asking you-all to protect," correct?

09:25:24 6        A.   To safeguard, make sure there's no incidents,

09:25:27 7    yes.

09:25:27 8        Q.   Okay.  And so he's telling you, "I want you to

09:25:29 9    do specific things out here.  I want you to do traffic

09:25:32 10   control.  I want you to do security around the parking

09:25:34 11   lots.  I want you to go out here and do these things,"

09:25:37 12   correct?

09:25:38 13                   MR. GARZA:   Objection, form.

09:25:39 14                   MS. TILL:   Same objection.

09:25:39 15                   THE WITNESS:   We do those things, sir,

09:25:41 16   that are -- that are innate for a police officer to do.

09:25:46 17       Q.   Well, I understand that you do what's innate

09:25:48 18   for a police officer, but this is what Mr. Gomez has

09:25:50 19   asked for you-all to do out there.

09:25:52 20                   MR. GARZA:   Objection, form.

09:25:53 21                   MS. TILL:   Same objection.

09:25:54 22       Q.   Isn't that correct?

09:25:55 23       A.   Like I said, we do those duties that are --

09:25:58 24   that are -- he hires us as security, but within that,

09:26:02 25   we do those duties of a police officer.

09:29:38 1    Q.  How many incident reports did you write up when
09:29:39 2  you were at the flea market?
09:29:41 3    A.  None.
09:29:42 4    Q.  Okay.  So while you were on duty during that
09:29:45 5  same eight-month period that you talked about that you
09:29:47 6  worked there, did you write up incident reports when
09:29:57 7  you were on duty?
09:29:57 8    A.  On duty?
09:29:57 9    Q.  Listen to my question.  It may have not made
09:29:57 10  sense.  Let me repeat it.
09:29:57 11          You told us a while ago that you were at
09:29:57 12  the flea market for some eight months prior to April of
09:30:00 13  2000.
09:30:01 14    A.  More or less.
09:30:02 15    Q.  Okay.  In that eight-month period, you told us
09:30:04 16  you didn't arrest anybody at the flea market while you
09:30:07 17  worked there, you didn't write any traffic tickets, you
09:30:10 18  didn't write any incident reports, correct?
09:30:13 19    A.  That's correct.
09:30:13 20    Q.  On the eight months that you were on duty as a
09:30:16 21  Brownsville police officer, did you make any arrests?
09:30:21 22    A.  Any arrests?
09:30:21 23    Q.  In that same eight-month period, did you make
09:30:24 24  any arrests while on duty as a police officer?
09:30:26 25    A.  At the flea market?

09:40:49 1    we saw needed -- that needed our attention.

09:40:54 2        Q.  Okay.  What I'm asking you, though, is, you

09:40:56 3    show up at work at 9:00 because that's the time that

09:40:59 4    they had told you that this is when he wants you -- or

09:41:02 5    whatever time, 7:00, 9:00, whatever time, "This is when

09:41:05 6    we want you to show up," correct?

09:41:07 7        A.  Correct.

09:41:08 8        Q.  Okay.  And at that time that you got there, the

09:41:09 9    other off-duty officers would also be there, correct?

09:41:12 10        A.  Correct.

09:41:13 11        Q.  How did you decide that I'm going to go to the

09:41:15 12    easement and that the other guy is going to go to the

09:41:19 13    Stillman Road exit and the other guy is going to ride

09:41:21 14    the golf cart?

09:41:22 15        A.  We would decide it upon ourselves right then

09:41:25 16    and there.

09:41:25 17        Q.  Okay.  And so what you did know and that

09:41:28 18    Mariano had told you is that this is what -- this is --

09:41:30 19    this is the idea of what we're doing here providing

09:41:34 20    security.

09:41:34 21            "We need traffic control over there.  We

09:41:36 22    need traffic control over here.  We want to make sure

09:41:38 23    that only certain people park through here," that kind

09:41:41 24    of thing, correct?

09:41:43 25            MR. GARZA:  Objection, form.

09:43:37 1    first instructions and the nature of their duties while

09:43:40 2    they were out there working security, correct?

09:43:43 3        A.  I don't know.  I don't know what happened.

09:43:45 4        Q.  Okay.  So you can't tell the jury that it

09:43:48 5    wasn't Mr. Gomez that told Mariano Gonzalez, "These are

09:43:51 6    the things that I want to cover.  I want to make sure

09:43:53 7    that there's no theft in the back parking area.  I want

09:43:56 8    to make sure that nobody parks in this area except

09:43:59 9    vendors.  I want to make sure traffic is flowing over

09:44:01 10   here."  To you, that's something that happened before

09:44:04 11   you were there?

09:44:05 12       A.  I don't know what they spoke between each

09:44:07 13   other.

09:44:07 14       Q.  That happened before you were there?

09:44:09 15       A.  I don't know what happened.

09:44:10 16            MR. GARZA:  Objection, form.

09:44:11 17       Q.  You have no knowledge how that transpired,

09:44:13 18   correct?

09:44:14 19       A.  I have no knowledge of it.

09:44:16 20       Q.  Okay.  So then once you get in to working for

09:44:20 21   Mr. Gomez, amongst yourselves, the very first time that

09:44:22 22   you get there, the other officers are the ones that

09:44:25 23   kind of tell you, "This is what we do," correct?

09:44:28 24       A.  Pretty much.

09:44:30 25       Q.  Okay.  You didn't just go out there and start

09:46:21 1    you, "I want you to go work in that other area," that

09:46:24 2    you have to do that.

09:46:26 3              MR. GARZA:  Objection, form.

09:46:27 4              MS. TILL:  Same objection.

09:46:27 5              THE WITNESS:  He never really tells us

09:46:29 6    what --

09:46:29 7        Q.  That's not what I asked you, sir.  My question

09:46:31 8    is, you knew back before April of 2000 that if

09:46:34 9    Mr. Gomez came and dictated, "Officers, I need you to

09:46:37 10   go back there because there's a complaint back there,"

09:46:40 11   or "there's something that I need you back there," you

09:46:42 12   knew that you needed to follow his direction, correct?

09:46:45 13       A.  Sure.

09:46:46 14             MR. GARZA:  Objection, form.

09:46:48 15             MS. TILL:  Objection, form.

09:46:48 16             THE WITNESS:  Sure.  If there was a

09:46:49 17   complaint, yeah, we would --

09:46:50 18       Q.  Whatever Mr. Gomez said, you understood

09:46:51 19   Mr. Gomez was the owner of the flea market, correct,

09:46:56 20   Basilio Gomez?

09:46:56 21       A.  I understand he's the owner.

09:46:58 22       Q.  Okay.  You understand that in April of 2000

09:46:59 23   that he was the owner?

09:47:00 24       A.  Yeah, I understand that.

09:47:01 25       Q.  And you understood that he was the one that was

```
1                IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
2                        BROWNSVILLE DIVISION

3    ROSALINDA SALAZAR AND        ) (
     JESUS SILVA SALAZAR          ) (
4            Plaintiffs           ) (
                                  ) (
5    VS.                          ) (   C.A. NO. B-01-105
                                  ) (
6    BASILIO GOMEZ, SR., CITY     ) (
     OF BROWNSVILLE AND CARLOS    ) (
7    ZAMORRANO, ARNOLD GALVAN,    ) (
     OSCAR LARA, ADRIAN           ) (
8    MASCORRO, AND REY LOPEZ      ) (
     INDIVIDUALLY AND IN THEIR    ) (
9    OFFICIAL CAPACITY AS         ) (
     EMPLOYEES FOR CITY OF        ) (
10   BROWNSVILLE                  ) (
             Defendants           ) (

11
                     REPORTER'S CERTIFICATE
12
          I, Donna McCown, Certified Court Reporter, certify
13   that the witness, REYNALDO LOPEZ, JR., was duly sworn
     by me, and that the deposition is a true and correct
14   record of the testimony given by the witness on
     DECEMBER 12, 2002; that the deposition was reported by
15   me in stenograph and was subsequently transcribed under
     my supervision.
16
          I FURTHER CERTIFY that I am not a relative,
17   employee, attorney or counsel of any of the parties,
     nor a relative or employee of such attorney or counsel,
18   nor am I financially interested in the action.

19                    WITNESS MY HAND on this the 23rd day of
     December           , 2002.
20
                              _____
21                            DONNA McCOWN, CSR NO. 6625
                              Expiration Date: 12/31/03
22                            Bryant & Stingley, Inc.
                              2010 East Harrison
23                            Harlingen, Texas  78550
                              (956)428-0755
24

25
```

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ROSALINDA SALAZAR AND ) (
JESUS SILVA SALAZAR ) (
      Plaintiffs ) (
       ) (
VS. ) (  C.A. NO. B-01-105
       ) (
BASILIO GOMEZ, SR., CITY ) (
OF BROWNSVILLE AND CARLOS ) (
ZAMORRANO, ARNOLD GALVAN, ) (
OSCAR LARA, ADRIAN ) (
MASCORRO, AND REY LOPEZ ) (
INDIVIDUALLY AND IN THEIR ) (
OFFICIAL CAPACITY AS ) (
EMPLOYEES FOR CITY OF ) (
BROWNSVILLE ) (
      Defendants ) (

---

ORAL AND VIDEOTAPED DEPOSITION OF
CARLOS ZAMORRANO
DECEMBER 12, 2002

ORIGINAL

---

ORAL AND VIDEOTAPED DEPOSITION OF CARLOS

ZAMORRANO, produced as a witness at the instance of the

PLAINTIFFS, taken in the above styled and numbered

cause on DECEMBER 12, 2002, reported by DONNA McCOWN,

Certified Court Reporter No. 6625, in and for the State

of Texas, at the offices of Willette & Guerra, L.L.P.,

3505 Boca Chica Boulevard, Suite 400, Brownsville,

Texas, pursuant to the Federal Rules of Civil Procedure.

BRYANT & STINGLEY, INC.
McAllen      Harlingen      Brownsville
(956)618-2366   (956)428-0755   (956)542-1020

13:56:56  1      Q.   Okay.  And you knew that Mariano Gonzalez was

13:57:00  2  hiring on behalf of Mr. Gomez, correct?

13:57:05  3      A.   Sure.

13:57:05  4      Q.   In other words, it wasn't Mr. Mariano Gonzalez

13:57:08  5  that was looking -- that you expected to pay you for

13:57:11  6  any services, right?

13:57:12  7      A.   Not Mariano, no.

13:57:14  8      Q.   Okay.  And you knew that when you worked at the

13:57:16  9  flea market that you would be working -- being paid by

13:57:20 10  the flea market?

13:57:22 11      A.   Yes, sir.

13:57:23 12      Q.   Okay.  And when you got out there, you knew

13:57:25 13  that you would be under the direction of somebody from

13:57:28 14  the flea market or Mariano Gonzalez, correct?

13:57:30 15      A.   Mariano, yes, sir.

13:57:31 16      Q.   You did not expect to engage in on-duty

13:57:35 17  responsibilities while you were at the flea market,

13:57:38 18  correct?

13:57:39 19      A.   Responding to calls for actual service from a

13:57:43 20  citizen, no.

13:57:45 21      Q.   Okay.  And as a matter of fact, as a detective,

13:57:47 22  what you were doing investigating juvenile crimes,

13:57:50 23  that's not what you expected to do when you worked at

13:57:53 24  the flea market, correct?

13:57:54 25      A.   Correct.

14:11:26 1    Q.  You were -- you understand that if Gomez told

14:11:29 2    you to change from the front to the back that you were

14:11:31 3    supposed to do that, correct?

14:11:33 4    A.  I never received any instructions from

14:11:36 5    Mr. Gomez.

14:11:36 6    Q.  I understand, but you understood that Gomez was

14:11:37 7    your boss out there, correct?

14:11:40 8    A.  If he asked me to do something, I'd do it as a

14:11:42 9    courtesy.

14:11:43 10   Q.  Well, is it a courtesy to do what you're told

14:11:45 11   by your employer, or is that part of the job

14:11:48 12   description?

14:11:51 13   A.  I guess I just never saw him as my boss.

14:11:55 14   Q.  Somebody that pays you for work and your

14:11:58 15   services, that's not somebody you consider to be your

14:12:00 16   employer?

14:12:01 17   A.  Sure, sure.

14:12:02 18   Q.  Okay.  And so although he may not have ever

14:12:04 19   given you specific instructions, you understood that he

14:12:07 20   was the boss out there, was the owner of the flea

14:12:09 21   market?

14:12:10 22   A.  Yes, sir.

14:12:11 23   Q.  He was -- he was the one that signed your

14:12:11 24   paychecks, right?

14:12:13 25   A.  Yes.

14:28:57 1    there near Stillman Road.

14:28:59 2        A.   Yes.

14:28:59 3        Q.   Is that correct?

14:29:00 4        A.   Yes, sir.

14:29:00 5        Q.   There's an exit -- there's an access road to

14:29:02 6    the flea market on Stillman right under the underpass.

14:29:02 7        A.   Correct.

14:29:06 8        Q.   Where were you actually at when you first

14:29:08 9    learned about something going on?

14:29:09 10        A.   At that intersection.

14:29:10 11        Q.   Were you on the frontage road itself, or were

14:29:11 12    you more on the property of Gomez flea market?

14:29:15 13        A.   I was on the frontage road itself.

14:29:17 14        Q.   You wouldn't have been out there at the

14:29:19 15    frontage road or at this scene had it not been for

14:29:22 16    working for Mr. Gomez that day, correct?

14:29:24 17        A.   Correct.

14:29:24 18        Q.   Otherwise, this was a day that you were off

14:29:26 19    duty, correct?

14:29:27 20        A.   Correct.

14:29:30 21        Q.   In other words, you were not assigned by the

14:29:31 22    Brownsville Police Department to be at the Gomez flea

14:29:35 23    market as part of your job duties, correct?

14:29:37 24        A.   Correct.

14:29:40 25        Q.   And there are times that the city sends its

14:29:44  1   police officers to a function for traffic control,

14:29:48  2   correct?

14:29:49  3        A.   Yes.

14:29:49  4        Q.   There are times where part of your job as a

14:29:52  5   police officer that you're directed to go somewhere for

14:29:55  6   traffic control or for crowd control, correct?

14:29:58  7        A.   Correct.

14:29:59  8        Q.   In this situation, Brownsville -- city of

14:30:02  9   Brownsville was aware of the amount of traffic and the

14:30:06 10   frontage road being the main road coming into

14:30:08 11   Brownsville, and there was -- there's no question that

14:30:10 12   the city of Brownsville did not send you nor the other

14:30:15 13   seven officers -- Lopez, Lara, Galvan, Mascorro,

14:30:20 14   whoever else was out there off duty -- none of those

14:30:23 15   were sent out there by the city of Brownsville,

14:30:26 16   correct?

14:30:26 17        A.   Correct.

14:30:26 18        Q.   And all those officers -- Galvan, Lara, Lopez,

14:30:30 19   yourself, and the other first officers that were

14:30:34 20   there -- were all being paid by Gomez to work security,

14:30:38 21   traffic control, that kind of thing, correct?

14:30:40 22        A.   Correct.

14:30:48 23        Q.   Now, you came.  You jumped over the fence,

14:30:50 24   correct?

14:30:51 25        A.   Yes, sir.

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF TEXAS
2              BROWNSVILLE DIVISION

3    ROSALINDA SALAZAR AND    ) (
     JESUS SILVA SALAZAR      ) (
4              Plaintiffs     ) (
                              ) (
5    VS.                      ) (  C.A. NO. B-01-105
                              ) (
6    BASILIO GOMEZ, SR., CITY ) (
     OF BROWNSVILLE AND CARLOS ) (
7    ZAMORRANO, ARNOLD GALVAN, ) (
     OSCAR LARA, ADRIAN       ) (
8    MASCORRO, AND REY LOPEZ  ) (
     INDIVIDUALLY AND IN THEIR ) (
9    OFFICIAL CAPACITY AS     ) (
     EMPLOYEES FOR CITY OF    ) (
10   BROWNSVILLE              ) (
               Defendants    ) (

11
              REPORTER'S CERTIFICATE
12
13      I, Donna McCown, Certified Court Reporter, certify
     that the witness, CARLOS ZAMORRANO, was duly sworn by
     me, and that the deposition is a true and correct
14   record of the testimony given by the witness on
     DECEMBER 12, 2002; that the deposition was reported by
15   me in stenograph and was subsequently transcribed under
     my supervision.
16
        I FURTHER CERTIFY that I am not a relative,
17   employee, attorney or counsel of any of the parties,
     nor a relative or employee of such attorney or counsel,
18   nor am I financially interested in the action.

19            WITNESS MY HAND on this the 23rd day of
20   December        , 2002.

21   DONNA McCOWN, CSR NO. 6625
     Expiration Date: 12/31/03
22   Bryant & Stingley, Inc.
     2010 East Harrison
23   Harlingen, Texas  78550
     (956) 428-0755

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ROSALINDA SALAZAR AND      ) (
JESUS SILVA SALAZAR        ) (
     Plaintiffs         ) (
                  ) (
VS.                        ) (   C.A. NO. B-01-105
                  ) (
BASILIO GOMEZ, SR., CITY   ) (
OF BROWNSVILLE AND CARLOS  ) (
ZAMORRANO, ARNOLD GALVAN,  ) (
OSCAR LARA, ADRIAN         ) (
MASCORRO, AND REY LOPEZ    ) (
INDIVIDUALLY AND IN THEIR  ) (
OFFICIAL CAPACITY AS       ) (
EMPLOYEES FOR CITY OF      ) (
BROWNSVILLE                ) (
     Defendants         ) (

---

ORAL AND VIDEOTAPED DEPOSITION OF
ARNOLD GALVAN
DECEMBER 11, 2002

# ORIGINAL

---

    ORAL AND VIDEOTAPED DEPOSITION OF ARNOLD

GALVAN, produced as a witness at the instance of the

PLAINTIFFS, taken in the above styled and numbered

cause on DECEMBER 11, 2002, reported by DONNA McCOWN,

Certified Court Reporter No. 6625, in and for the State

of Texas, at the offices of Willette & Guerra, L.L.P.,

3505 Boca Chica Boulevard, Suite 400, Brownsville,

Texas, pursuant to the Federal Rules of Civil Procedure.

09:31:49 1     A.  The type of arrest is depending on whether it's

09:31:49 2  a misdemeanor or a felony, if that's what you're

09:31:50 3  getting at.  I mean, either way, the policy and

09:31:52 4  procedure as far as towards arrest is the same.

09:31:54 5          I mean, if an officer needs backup, then

09:31:57 6  you go and back him up.  If you see a misdemeanor, as

09:32:01 7  far as like a traffic violation or a parking ticket, we

09:32:04 8  would call officers on duty to try and handle that.

09:32:08 9     Q.  And so what does the policy and procedures

09:32:10 10 manual tell you, not what you would do, what does the

09:32:13 11 manual dictate for you to do, or is that what you're

09:32:16 12 telling us?

09:32:18 13    A.  That is what I'm telling you, sir.

09:32:20 14    Q.  All right.  Now, I want to ask you some

09:32:21 15 questions about Jesus Silva, and he's seated here

09:32:26 16 behind me.  You know Mr. Silva, correct?

09:32:28 17    A.  Yes, sir.

09:32:28 18    Q.  And prior to April of 2000, how long had you

09:32:31 19 worked at the flea market?

09:32:34 20    A.  I don't know exactly, but I would say about

09:32:37 21 two, maybe two, three years.

09:32:40 22    Q.  And on the day of the -- of April 9th, 2000,

09:32:45 23 you were paid by the flea market, Basilio Gomez's flea

09:32:52 24 market, correct?

09:32:53 25    A.  Yes, sir.

09:32:53 1    Q.   For that -- from the time that you went in

09:32:55 2    until the time that you left, that day you were paid by

09:32:58 3    Basilio Gomez, correct?

09:32:59 4    A.   Yes, sir.

09:32:59 5    Q.   And even -- even though that you were, at least

09:33:03 6    in the reports, effecting an arrest and so forth, that

09:33:08 7    day you got a check covering or paid cash, somehow or

09:33:12 8    another you got paid by Basilio Gomez for that day,

09:33:15 9    correct?

09:33:16 10    A.   Yes, sir.

09:33:16 11    Q.   You were not paid by the Brownsville Police

09:33:18 12    Department for that day, correct?

09:33:19 13    A.   No, sir.

09:33:27 14    Q.   Okay.  Now -- sorry about that.  The day of

09:33:33 15    the -- how did you get this job?

09:33:35 16    A.   Usually, the way we get -- well, the way I got

09:33:38 17    that job, Mariano Gonzalez was the one in charge of

09:33:42 18    that, and through -- by word of mouth that he needed

09:33:45 19    officers there.

09:33:48 20    Q.   And I had copies of your -- your file was given

09:33:52 21    to me, your employment file, and I note -- do not see

09:33:55 22    anything that indicates that the city, any supervisor

09:33:59 23    or police chief signed off on you working any off-duty

09:34:04 24    employment.

09:34:04 25    A.   As far as I know, I don't know if they ever

11:58:21  1    Q.  And you would have used whatever force

11:58:27  2    necessary, and at the moment that you were there, you

11:58:29  3    saw no need for the use of anything other than you

11:58:33  4    using your arms to try to effect the arrest, correct?

11:58:37  5    A.  Correct.

11:58:38  6    Q.  All right.  The only people around Mr. Silva

11:58:40  7    when you approached were two officers who had been

11:58:44  8    working off duty for Mr. Gomez, correct?

11:58:46  9    A.  Correct.

11:58:47 10    Q.  The only people that were around Mr. Silva that

11:58:49 11    were trying to subdue him were two individuals who were

11:58:52 12    working for Mr. Gomez who happened to be off duty

11:58:55 13    officers, correct?

11:58:57 14    A.  Correct.

11:58:57 15    Q.  When you came up and Mr. Zamorrano came up and

11:59:00 16    Mr. Mascorro came up, there were five individuals

11:59:03 17    around Mr. Silva who happened to be working for

11:59:07 18    Mr. Gomez in security guard capacity who happened to be

11:59:12 19    off-duty police officers, correct?

11:59:14 20    A.  We all happened to be in the premises.  We

11:59:16 21    weren't all around him.

11:59:17 22    Q.  Okay.  I understand, but all of you were

11:59:20 23    Mr. Gomez employees on that day, correct?

11:59:22 24    A.  Correct.

11:59:24 25    Q.  On that day that you started to work, you did

11:59:27  1    not anticipate being a police officer engaged in

11:59:30  2    on-duty activities, correct?

11:59:32  3               MR. GARZA:  Objection, form.

11:59:35  4               MS. TILL:  Same objection.

11:59:36  5               THE WITNESS:  I anticipate being a police

11:59:38  6    officer all the time.  You're a police officer 24 hours

11:59:42  7    a day.  When you go to work, you have to work as a

11:59:43  8    police officer.

11:59:45  9        Q.  Listen to my question, please, sir.

11:59:46 10        A.  Okay, sir.

11:59:47 11        Q.  You did not anticipate being engaged in on-duty

11:59:51 12    responsibilities when you went to go work for Mr. Gomez

11:59:54 13    that day, did you?

11:59:56 14               MR. GARZA:  Objection, asked and answered.

11:59:58 15               THE WITNESS:  Sir, when we go on work

11:59:59 16    there, as far as off duty and on duty, yes, we are off

12:00:03 17    duty when we're working there, but we are still police

12:00:06 18    officers.

12:00:06 19        Q.  I heard that already, but that's not my

12:00:08 20    question, sir.  My question, sir, is you're on duty

12:00:19 21    working for Mr. -- I mean, you're off duty.  Your only

12:00:19 22    employer while you're off duty is Mr. Gomez, correct?

12:00:19 23        A.  And the Brownsville Police Department, correct.

12:00:19 24        Q.  Okay.  So you are employed and being paid for

12:00:21 25    the days that you're off by the Brownsville Police

11:29:49  1    Q.  Okay.  And then do what with him?

11:29:51  2    A.  Transport him to city jail.

11:29:53  3    Q.  And if there was no police department vehicle

11:29:55  4    there, then what would you have done?

11:29:57  5    A.  Wait for one to get there.

11:29:59  6    Q.  Any reasonable basis for an off-duty police

11:30:02  7    officer to call and ask for a golf cart to be brought

11:30:05  8    to the front?

11:30:06  9    A.  No, sir.

11:30:07 10    Q.  Okay.  Can you -- can you understand any reason

11:30:15 11    why Lopez or Lara would have said to bring a golf cart

11:30:19 12    to the front?

11:30:19 13    A.  No, sir.

11:30:21 14    Q.  Okay.  Would that have been proper procedure?

11:30:23 15    A.  No, sir.

11:30:37 16    Q.  If Mr. Zamorrano says he did or didn't hit

11:30:40 17    Mr. Silva, you don't have -- you don't know at any time

11:30:42 18    when he was on the ground because you weren't looking

11:30:44 19    at that time, correct?

11:30:45 20    A.  I did not see him do it, sir.

11:30:47 21    Q.  I'm sorry?

11:30:47 22    A.  I don't know whether he did or not.

11:31:05 23    Q.  Okay.  Did you have problems on a routine basis

11:31:09 24    when you were controlling traffic out there with people

11:31:14 25    that -- that would disregard you and take a left when

11:31:16  1   you told them not to or, you know, stop when they
11:31:20  2   weren't supposed to?
11:31:22  3       A.  Did I have problems when directing traffic?
11:31:25  4       Q.  Yeah.
11:31:25  5       A.  That people would disregard?
11:31:26  6       Q.  Right.
11:31:27  7       A.  Yes, sir.
11:31:27  8       Q.  That was not unusual, was it, out there?
11:31:30  9       A.  No, sir.
11:31:31 10       Q.  There were thousands of cars that were coming
11:31:32 11   in, and we have counters that say that there were 7 to
11:31:36 12   8,000 cars a day passing on that easement on Saturdays
11:31:39 13   and Sundays.  Would you dispute those numbers?
11:31:51 14       A.  No, sir.
11:31:51 15       Q.  Did you arrest every one of those persons that
11:31:51 16   disregarded your directions?
11:31:51 17       A.  No, sir.
11:31:51 18       Q.  Did you give them tickets?
11:31:51 19       A.  No, sir.
11:31:51 20       Q.  Why not?
11:31:53 21       A.  Because our main concern there was try to
11:31:55 22   alleviate traffic so not to cause any accidents.
11:31:58 23       Q.  Did you chase them down?
11:32:00 24       A.  No, sir.
11:32:00 25       Q.  Tell them, "You need to listen to me next

11:32:01 1  time"?

11:32:02 2      A.  No, sir.

11:32:02 3      Q.  Did you walk after them?  Did you tell another

11:32:04 4  officer, "Go ticket that guy"?  Did you call in police

11:32:06 5  department and say to ticket him or something?

11:32:08 6      A.  No, sir.

11:32:08 7      Q.  You didn't do anything, right?

11:32:11 8      A.  I directed traffic, sir.

11:32:13 9      Q.  No.  I'm sorry.  You didn't do anything to

11:32:15 10 those people who disregarded you at times when you were

11:32:18 11 directing traffic, correct?

11:32:20 12     A.  Correct.

11:32:20 13     Q.  That's a class C misdemeanor, isn't it?

11:32:23 14     A.  A traffic violation usually is, yes, sir.

11:32:25 15     Q.  Okay.  And that is a misdemeanor that you can

11:32:28 16 arrest somebody for, correct?

11:32:30 17     A.  Not usually.  Usually it's called for a

11:32:34 18 citation.

11:32:36 19     Q.  Okay.  And you didn't issue any citations for

11:32:38 20 something like that when you were out there, correct?

11:32:40 21     A.  Correct.

11:32:40 22     Q.  You never arrested anybody either, correct?

11:32:43 23     A.  Correct.

11:32:43 24     Q.  Okay.  Is it your normal practice to arrest

11:32:47 25 persons for misdemeanors when -- if it's a traffic

```
 1                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF TEXAS
 2                         BROWNSVILLE DIVISION

 3    ROSALINDA SALAZAR AND        ) (
      JESUS SILVA SALAZAR          ) (
 4           Plaintiffs            ) (
                                   ) (
 5    VS.                          ) (   C.A. NO. B-01-105
                                   ) (
 6    BASILIO GOMEZ, SR., CITY     ) (
      OF BROWNSVILLE AND CARLOS    ) (
 7    ZAMORRANO, ARNOLD GALVAN,    ) (
      OSCAR LARA, ADRIAN           ) (
 8    MASCORRO, AND REY LOPEZ      ) (
      INDIVIDUALLY AND IN THEIR    ) (
 9    OFFICIAL CAPACITY AS         ) (
      EMPLOYEES FOR CITY OF        ) (
10    BROWNSVILLE                  ) (
             Defendants            ) (

11

12                       REPORTER'S CERTIFICATE

13        I, Donna McCown, Certified Court Reporter, certify
      that the witness, ARNOLD GALVAN, was duly sworn by me,
      and that the deposition is a true and correct record of
14    the testimony given by the witness on DECEMBER 11,
      2002; that the deposition was reported by me in
15    stenograph and was subsequently transcribed under my
      supervision.

16

          I FURTHER CERTIFY that I am not a relative,
17    employee, attorney or counsel of any of the parties,
      nor a relative or employee of such attorney or counsel,
18    nor am I financially interested in the action.

19                       WITNESS MY HAND on this the 23rd day of
      December              , 2002.
20
                                   Donna McCown
21                                 _____
                                   DONNA McCOWN, CSR NO. 6625
22                                 Expiration Date: 12/31/03
                                   Bryant & Stingley, Inc.
23                                 2010 East Harrison
                                   Harlingen, Texas  78550
24                                 (956)428-0755

25
```

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

ROSALINDA SALAZAR AND     ) (
JESUS SILVA SALAZAR       ) (
     Plaintiffs         ) (
                     ) (
VS.                       ) (   C.A. NO. B-01-105
                     ) (
BASILIO GOMEZ, SR., CITY  ) (
OF BROWNSVILLE AND CARLOS  ) (
ZAMORRANO, ARNOLD GALVAN, ) (
OSCAR LARA, ADRIAN        ) (
MASCORRO, AND REY LOPEZ   ) (
INDIVIDUALLY AND IN THEIR ) (
OFFICIAL CAPACITY AS      ) (
EMPLOYEES FOR CITY OF     ) (
BROWNSVILLE               ) (
     Defendants         ) (

---

ORAL AND VIDEOTAPED DEPOSITION OF
OSCAR LARA
DECEMBER 11, 2002

ORIGINAL

---

     ORAL AND VIDEOTAPED DEPOSITION OF OSCAR LARA,
produced as a witness at the instance of the
PLAINTIFFS, taken in the above styled and numbered
cause on DECEMBER 11, 2002, reported by DONNA McCOWN,
Certified Court Reporter No. 6625, in and for the State
of Texas, at the offices of Willette & Guerra, L.L.P.,
3505 Boca Chica Boulevard, Suite 400, Brownsville,
Texas, pursuant to the Federal Rules of Civil Procedure

BRYANT & STINGLEY, INC.
McAllen          Harlingen          Brownsville
(956)618-2366   (956)428-0755   (956)542-1020

16:28:17  1    and, you know, "Salganse de la propiedad," you know.

16:28:26  2        Q.   "Leave him alone.  Get out of here."

16:28:28  3        A.   Yes, sir.

16:28:29  4        Q.   Translating what you just said.

16:28:31  5        A.   Yes, sir.

16:28:31  6             MR. GARZA:  "Get out of the property," I

16:28:33  7    think is the translation.

16:28:34  8             MR. VILLEGAS:  He didn't say "propiedad."

16:28:36  9             MR. GARZA:  Yes, he did.

16:28:38 10             THE WITNESS:  Yeah, "Propiedad."

16:28:38 11        Q.   Okay.  So they said --

16:28:41 12        A.   "Salganse de la propiedad."

16:28:41 13        Q.   Okay.

16:28:42 14        A.   "Get off my property," basically.

16:28:44 15        Q.   And again, the only -- the only people that

16:28:45 16    he's telling that -- that Silvas are telling that to

16:28:48 17    are the group of off-duty police officers that are on

16:28:51 18    the scene?

16:28:52 19        A.   Yes, sir.

16:28:52 20        Q.   There's not any on-duty police officers?

16:28:55 21        A.   At that time, no, sir.

16:28:57 22        Q.   And when the on-duty police officers came in

16:29:00 23    their police cars, Silvas didn't continue to make those

16:29:03 24    statements, did they?

16:29:04 25        A.   Yes, sir, they did.

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    BROWNSVILLE DIVISION

 3    ROSALINDA SALAZAR AND       ) (
      JESUS SILVA SALAZAR         ) (
 4           Plaintiffs           ) (
                                  ) (
 5    VS.                         ) (   C.A. NO. B-01-105
                                  ) (
 6    BASILIO GOMEZ, SR., CITY    ) (
      OF BROWNSVILLE AND CARLOS   ) (
 7    ZAMORRANO, ARNOLD GALVAN,   ) (
      OSCAR LARA, ADRIAN          ) (
 8    MASCORRO, AND REY LOPEZ     ) (
      INDIVIDUALLY AND IN THEIR   ) (
 9    OFFICIAL CAPACITY AS        ) (
      EMPLOYEES FOR CITY OF       ) (
10    BROWNSVILLE                 ) (
             Defendants           ) (
11
                    REPORTER'S CERTIFICATE
12
          I, Donna McCown, Certified Court Reporter, certify
13    that the witness, OSCAR LARA, was duly sworn by me, and
      that the deposition is a true and correct record of the
14    testimony given by the witness on DECEMBER 11, 2002;
      that the deposition was reported by me in stenograph
15    and was subsequently transcribed under my supervision.

16        I FURTHER CERTIFY that I am not a relative,
      employee, attorney or counsel of any of the parties,
17    nor a relative or employee of such attorney or counsel,
      nor am I financially interested in the action.

18                    WITNESS MY HAND on this the 23rd day of
19    December            , 2002

20                         DONNA McCOWN, CSR NO. 6625
21                         Expiration Date: 12/31/03
                           Bryant & Stingley, Inc.
22                         2010 East Harrison
                           Harlingen, Texas  78550
23                         (956)428-0755

24

25
```